UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

No. 5:10-CV-119-F

GREGORY WARD,           )
REGINA WARD,            )
                        )
            Plaintiffs, )
                        )
        v.              )        ORDER
                        )
SECURITY ATLANTIC MORTGAGE   )
ELECTRONIC REGISTRATION      )
SYSTEMS, INC. BANK OF        )
AMERICA (BAC) HOME LOANS     )
SERVICING, LP.               )
                        )
            Defendants.  )

This matter is before the court on the Second Motion to Dismiss [DE-17] filed by Defendants

BAC Home Loans Servicing, LP ("BAC")[1] and Mortgage Electronic Registration Systems, Inc.

("MERS") (collectively "Defendants") pursuant to Rule 12(b)(6).

## I. PROCEDURAL AND FACTUAL BACKGROUND

Plaintiffs, proceeding *pro se*, commenced this action on March 23, 2010, seeking monetary

damages and declaratory relief related to Defendants' and Security Atlantic Mortgage's ("SAM")

alleged violations of the Truth In Lending Act ("TILA"), 15 U.S.C. § 1601 *et seq.*, and its

implementing regulation, 12 C.F.R. § 226.1, *et seq.* ("Regulation Z"); the Home Ownership and

Equity Protection Act ("HOEPA"), 15 U.S.C. § 1639 *et seq.*, a 1994 amendment to TILA; the Real

Estate Settlement Procedures Act ("RESPA"), 12 U.S.C. § 2601 *et seq.*; the Fair Credit Reporting

Act ("FCRA"), 11 U.S.C. § 1681 *et seq.*; the Equal Credit Opportunity Act ("ECOA"), 15 U.S.C.

---

[1]     In the caption of the Amended Complaint, Plaintiffs incorrectly identify Defendant BAC as
"Bank of America (BAC) Home Loans Servicing, LP." [DE-15].

§ *et seq.*; and the Federal Trade Commission Act ("FTCA"), 15 U.S.C. § 41 *et seq.* Compl. at 2-3, 5 [DE-1]. Plaintiffs also seek punitive damages for "harassment, emotional distress and displacement." *Id.* at 6. The complaint relates to a deed of trust and promissory note in favor of SAM executed by Plaintiffs on September 11, 2007, which secures a mortgage in the amount of $153,315.00 related to the refinance of property in Raleigh, North Carolina. *Id.* at 1-2. In support of their claims, Plaintiffs cite caselaw from numerous jurisdictions.

In its February Order, the court granted Defendants' motion to dismiss. [DE-14]. In particular, the court found as follows: (1) Plaintiffs failed to state any allegations of wrongdoing by MERS; (2) Plaintiffs failed to make any allegations that give rise to the plausible inference that BAC is a "creditor" or "assignee" within the meaning of TILA; (3) Plaintiffs' allegation that BAC did not give notice of the transfer of Plaintiffs' mortgage loan 15 days prior to the transfer did not state a claim under § 2605(c) of RESPA; (4) Plaintiffs did not allege any actual damages in support of their claim under § 2605(e) of RESPA that BAC failed to respond to Plaintiffs' qualified written request; (5) Plaintiffs' claim under § 2607 of RESPA for illegal kickbacks was barred by the statute of limitations, and (6) to the extent Plaintiffs attempted to state a claim for violations of the FCRA, FTCA and ECOA, or for "harassment, emotional distress and displacement," the claims were dismissed. The court, however, allowed Plaintiffs 21 days to amend the complaint to correct the pleading deficiencies therein with respect to all of their claims, except the illegal kickback claim which was dismissed with prejudice. The court also ordered Plaintiffs to show, within 21 days, good cause for their failure to make service on SAM within 120 days of the filing of the complaint in this action. The court specifically warned Plaintiffs that the failure to respond to the order and/or demonstrate good cause would result in the dismissal of this action as to SAM.

2

On February 25, 2011, Plaintiffs filed an Amended Complaint [DE-15], naming SAM, BAC and MERS as Defendants. Despite the February Order's instructions as to SAM, Plaintiffs failed to file any response addressing the lack of proof of service thereon. Accordingly, on March 9, 2011, the court dismissed Plaintiffs' claims against SAM without prejudice. [DE-16]. On March 14, 2011, Defendants BAC and MERS filed a motion to dismiss the amended complaint. [DE-17]. Thereafter, Plaintiffs filed their response [DE-25], and Defendants BAC and MERS filed a reply [DE-27].[2]

## II. STANDARD OF REVIEW

The purpose of a motion to dismiss under Rule 12(b)(6) is to test the legal sufficiency of the complaint, not to resolve conflicts of fact or to decide the merits of the action. *Edwards v. City of Goldsboro*, 178 F.3d 231, 243-44 (4th Cir. 1999). In considering a motion to dismiss, the court assumes the truth of all facts alleged in the complaint and the existence of any fact that can be proved, consistent with the complaint's allegations. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). "The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *Revene v. Charles County Comm'rs*, 882 F.2d 870, 872 (4th Cir. 1989) (quoting *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974)).

However, the "'[f]actual allegations must be enough to raise a right to relief above the speculative level' and have 'enough facts to state a claim to relief that is plausible on its face.'" *Wahi v. Charleston Area Med. Ctr., Inc.*, 562 F.3d 599, 616 n.26 (4th Cir. 2009) (quoting *Bell Atl. Corp.*

---

[2]     On April 6, 2011, Plaintiffs argued they had not received a copy of the Second Motion to Dismiss. [DE-20]. The court, out of an abundance of caution, directed the Clerk of Court to mail a copy of the Second Motion to Dismiss and supporting memorandum to Plaintiffs, and gave Plaintiffs until May 26, 2011 to file a response. [DE-22]. The court thereafter allowed Plaintiffs' motion for an extension of time to file a response, up to and including June 24, 2011. [DE-24]. Plaintiffs' response [DE-25] was filed on June 23, 2011.

*v. Twombly*, 550 U.S. 544, 555 (2007)). *See also Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937, 1950 (2009) ("While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations."). "[A] plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of a cause of action's elements will not do." *Twombly*, 550 U.S. at 555 (citations omitted). Moreover, a court "need not accept the legal conclusions drawn from the facts" nor "accept as true unwarranted inferences, unreasonable conclusions, or arguments." *Eastern Shore Mkts., Inc. v. J.D. Assocs. Ltd. Pshp.*, 213 F.3d 175, 180 (4th Cir. 2000).

The standard for evaluating the sufficiency of the pleading in the instant case is particularly flexible because "[a] document filed *pro se* is to be liberally construed, and a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson*, 551 U.S. at 93 (internal citation omitted). Notwithstanding the court's obligation to liberally construe a *pro se* plaintiff's allegations, however, the court is not required to accept a *pro se* plaintiff's contentions as true, *Denton v. Hernandez*, 504 U.S. 25, 32 (1992), and cannot ignore a clear failure to allege facts which set forth a claim cognizable in a federal district court. *See Weller v. Dep't of Soc. Servs.*, 901 F.2d 387, 391 (4th Cir. 1990) ("The 'special judicial solicitude' with which a district court should view such *pro se* complaints does not transform the court into an advocate. Only those questions which are squarely presented to a court may properly be addressed.").

## III. DISCUSSION

Defendants BAC and MERS again move to dismiss all claims against them, arguing that Plaintiffs' amended complaint fails to cure the deficiencies of the original complaint and still fails

4

to allege sufficient facts to support any claim. As Defendants note, with the exception of a few changes, the factual allegations in the amended complaint are identical to the original complaint. In particular, the amended complaint differs factually from the complaint in the following respects:

(1)    it does not contain the allegation "[t]his loan is apart [sic] of a pool of securities that have been sold for investment on wall [sic] Street;"

(2)    the allegation "[t]he closing documents were not given to the Plaintiff [sic]" has been changed to "[a]ll closing documents were not given to the Plaintiff [sic];"

(3)    the word "asked" in the allegation that BAC "has failed to give an accounting of all payments received when asked" was replaced with "requested;"

(4)    it contains the following additional allegations:

    a.    "Bank of America [sic] cannot show by the [sic] way of proof from the United States Postal Service or any other carrier services that the plaintiff's [sic] were given notice as required by law;"

    b.    "MERS did not have the legal authority to transfer or assign this or any note to another Lender/servicer. (See Exhibit "C") Security Deed [sic];" and

    c.    "[t]he plaintiff's [sic] have tried many times to resolve this matter with no avail."

Am. Compl. at 2-4 (emphasis added). The amended complaint also contains the following exhibits:

(1)    Qualified Written Request dated March 19, 2010, Ex. A [DE-15.1]

(2)    Notice of Removal filed March 19, 2010 with the Wake County Register of Deeds and recorded in Book 13882 Page 2323, Ex. B [DE-15.2]

(3)    Notice of Right to Cancel and Release and Cancellation, Ex. C [DE-15.3]; and

(4)    Notice of Insufficient Validation, Ex. D [DE-15.4].

With the above changes and exhibits in mind, the court now turns to Plaintiffs' claims.

## A.    TILA Claims

TILA "has the broad purpose of promoting 'the informed use of credit' by assuring 'meaningful disclosure of credit terms' to consumers." *Ford Motor Credit Co. v. Milhollin*, 444 U.S. 555, 559 (1980). *See* U.S.C. § 1601(a). Accordingly, creditors are required "to provide borrowers with clear and accurate disclosures of terms dealing with things like finance charges, annual

5

percentage rates of interest, and the borrower's rights." *Beach v. Ocwen Fed. Bank*, 523 U.S. 410, 412 (1998). With respect to TILA violations, Plaintiffs argue Defendants failed to (1) provide unspecified material disclosures regarding their loan,[3] (2) include the required copies of the Notice of Right to Cancel form at the time Plaintiffs' loan was consummated,[4] and (3) honor Plaintiffs' March 2010 rescission of the loan. Am. Compl. at 2, 5; Ex. C [DE-15.3]. Plaintiffs contend further that MERS "does not have standing as a Nominee" and that MERS "did not have legal authority to transfer" the note. Am. Compl. at 3-4.

While the amended complaint is far from a model of clarity, these allegations suggest that the TILA-related issues before the court are whether the alleged non-disclosures and failure to provide the required notice preserved Plaintiffs' right to rescind for three years, *see* 15 U.S.C. § 1635(f), and whether Plaintiffs have alleged that Defendants violated TILA's rescission procedures by failing to adequately respond to their rescission notice, *see id.* § 1635(b). Defendants provide no substantive briefing, arguing only that they are not "creditors" within the meaning of TILA and the statute of limitations bars any claim under TILA for damages.

1.  Liability of BAC and MERS under TILA

Only creditors and assignees are subject to liability under TILA. *See* 15 U.S.C. §§ 1640,

---

[3]     The term "material disclosures" includes the annual percentage rate, the finance charge, the amount financed, the total of payments and the payment schedule. 12 C.F.R. § 226.23 n.48.

[4]     A creditor must provide notice of a borrower's right to rescind in a separate document that "clearly and conspicuously disclose[s]" the right to rescind. 15 U.S.C. § 1635(a). Pursuant to authority delegated by Congress, 15 U.S.C. § 1604(b), the Board of Governors of the Federal Reserve System has promulgated a set of model notice forms as part of its comprehensive TILA regulations known as Regulation Z. *See* 12 C.F.R. §§ 226.1-226.59. To comply with the notice requirements, a creditor must use either one of these model forms or a "substantially similar notice." *Id.* § 226.23(b)(2). *See also* 15 U.S.C. § 1604(b).

6

1641(a). As a threshold matter, the court initially dispenses with the issue of whether Defendants qualify as creditors as defined by 15 U.S.C. § 1602(g) and 12 C.F.R. § 226.2(a)(17), as the amended complaint, like the original complaint, contains no allegations or inference that either MERS or BAC was the entity to whom the debt was originally payable. In fact, Plaintiffs specifically allege that the September 2007 loan was "obtained from" SAM. Am. Compl. at 1.

       (i)    *BAC*

Turning to the issue of assignee liability as to BAC, Plaintiffs specifically allege BAC is a servicer. Am. Compl. at 2. TILA expressly provides that a servicer – a person responsible for receiving any scheduled periodic payments from a borrower pursuant to the terms of any loan, 15 U.S.C. § 1641 (f)(3); 12 U.S.C. § 2605(i)(2)-(3) – is not to be treated as an assignee "unless the servicer is or was the owner of the obligation." 15 U.S.C. § 1641(f)(1). Plaintiffs' amended complaint contains no factual allegations as to BAC's former or present ownership of Plaintiffs' loan. In Plaintiffs' response, Plaintiffs state that BAC "does not have the Plaintiffs' loan or their original note . . . ." Pls.' Resp. at 3 [DE-25]. However, it appears this statement centers on the allegation that MERS improperly assigned the mortgage to BAC and as such, BAC is not a holder in due course. *See id.* This observation is buttressed by the allegation in the amended complaint that MERS "did not have legal authority to transfer or assign this . . . note to another [l]ender/servicer." Am. Compl. at 4. Furthermore, Plaintiffs expressly identified BAC as the lender in their Notice of Right to Cancel. *See* Ex. C [DE-15.3]. In light of the assignment allegation and the lender classification in the purported rescission notice, the court finds Plaintiffs' allegations are sufficient to raise a plausible inference that BAC presently owns the note and thus qualifies as an "assignee" under TILA.

7

(ii)    *MERS*

As for MERS, the court observes at the outset that the amended complaint contains no

allegations giving rise to the inference that MERS is or was an assignee of the loan. Therefore,

MERS is not subject to damages under TILA and Plaintiffs' failure to disclose and failure to honor

rescission damages claims against MERS are DISMISSED WITH PREJUDICE.

Next, the court addresses Plaintiffs' allegations concerning MERS regarding its capacity as

"nominee" for the lender in the deed of trust securing the subject property and the contention that

MERS "does not have standing as a [n]ominee" and improperly assigned its rights under the deed

of trust to BAC. [5] Am. Compl. at 3. As to the issue of standing, "it is unclear for what MERS lacks

---

[5]    MERS maintains an electronic registry that stores information as to who originates, services, and owns mortgage loans. *See Rosa v. Mortgage Elec. Registration Sys., Inc.*, No. 10-12141-PBS, __ F. Supp. 2d __, 2011 U.S. Dist. LEXIS 110151, at *11-*12, 2011 WL 5223349, at *3 (D. Mass. Sept. 9, 2011). *See also In re Tucker*, 441 B.R. 638, 644 (Bankr. W.D. Mo. 2010) (explaining MERS "provides a system for registering who holds a particular note, and who is therefore empowered to exercise rights under the corresponding mortgage or deed of trust"). MERS has several members, known as member firms, which subscribe to MERS and pay fees for MERS' services and access to MERS' system. *Id.* (citation omitted). At the origination of a residential loan, the lender takes possession of a promissory note, *In re Mortgage Elec. Registration Sys. (MERS) Litig.*, No. 09-2119, 2011 U.S. Dist. LEXIS 117107, at *36, 2011 WL 4550189, at *3 (D. Ariz. Oct. 3, 2011) and the borrower and lender agree that MERS is designated in the deed of trust as a "nominee" for the lender and the lender's successors and assigns as well as the "beneficiary" of the deed. *Cervantes v. Countrywide Home Loans, Inc.*, 656 F.3d 1034, 1039 (9th Cir. 2011). "MERS is not involved in originating the loan, does not have any right to payments on the loan, and does not service the loan." *Cervantes*, 656 F.3d at 1039-1040 (citations omitted). In other words, a promissory note does not confer any rights on MERS nor does it name MERS as a party to the note.

Rather, MERS' rights are defined solely by the deed of trust and because it is a nominee only, its rights and duties under the deed of trust are limited. *See* Black's Law Dictionary 478 (2nd ed. 2001) (defining nominee as "[a] person designated to act in place of another, usu[ally] in a very limited way" or "[a] party who holds bare legal title for the benefit of others . . . ."). Its "nominee" status allows the transfer of servicing rights of the note among MERS members without the need to publicly record such assignments; instead assignments of the note are tracked by MERS' electronic system. *See Rosa*, 2011 U.S. Dist. LEXIS 110151, at *11, 2011 WL 5223349, at *4 (citation omitted). *See also In re Tucker*, 441 B.R. at 645 (explaining "the MERS website posts a toll-free number that borrowers may call to learn how to obtain information about the holder and status of

8

standing." *Thomas v. Green Point Mortg. Funding*, No. 5:10-CV-365-D, 2011 U.S. Dist. LEXIS

65887, at *6, 2011 WL 2457835, at *2 (E.D.N.C. 2011). Regardless, MERS is not seeking relief

against Plaintiffs in this case and, to the extent that MERS may be seeking relief against Plaintiffs

elsewhere, Plaintiffs must challenge MERS's standing within the context of that proceeding.

Similarly, as to the propriety of any assignment of the deed of trust by MERS to BAC, the

court notes at the outset that Plaintiffs' allegation that the transfer was not valid is a mere conclusion

and does not state a plausible claim. Moreover, Plaintiffs lack standing to challenge the validity of

any such assignment. An action to declare an assignment void could only be brought by someone

who can demonstrate a concrete and particularized injury in fact that is fairly traceable to the

challenged assignment. *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992). No such

injury is alleged. Indeed, Plaintiffs do not allege that they are either parties to the assignment or

intended beneficiaries; thus, they do not possess standing to assert a claim based on the assignment's

validity. *See Wolf v. Federal Nat. Mortg. Ass'n*, No. 3:11-CV-25, __ F. Supp. 2d __, 2011 U.S.

Dist. LEXIS 135259, at *18, 2011 WL 5881764, at *6 (W.D. Va. Nov. 23, 2011) (holding plaintiff

did not have standing to challenge the validity of an assignment from MERS to BAC because "she

was not a party to the assignment, and the assignment did not affect her underlying obligation to

make timely payments). *See also Livonia Prop. Holdings, L.L.C. v. 12840-12976 Farmington Rd.*

---

their loan). As long as the sale of the note involves a member of MERS, MERS remains the beneficiary of record on the deed of trust and continues to act as nominee for the new beneficial owner. *See In re Tucker*, 441 B.R. at 646 (explaining MERS serves as nominee for the original lender "under the Deed of Trust from the inception, and [] bec[omes] [nominee] for each subsequent note-holder under the Deed of Trust when each such noteholder negotiate[s] the [n]ote to its successor and assign"). "Once beneficial ownership of the note is transferred to a non-MERS member, MERS will assign the [deed of trust] and the assignment will be recorded with the registry of deeds." *Rosa*, 2011 U.S. Dist. LEXIS 110151, at *11, 2011 WL 5223349, at *3 )(alteration added & citation omitted).

*Holdings, L.L.C.*, 717 F. Supp. 2d 724, 735 (E.D. Mich. 2010) (noting "the validity of the assignments does not effect *whether* Borrower owes its obligations, but only *to whom* Borrower is obligated.") (emphasis in original).

Although the court has dismissed all of Plaintiffs' claims for damages against MERS, the court is cognizant that "[t]he equitable goal of rescission under TILA is to restore the parties to the 'status quo ante.'" *Am. Mortg. Network, Inc. v. Shelton*, 486 F.3d 815, 820 (4th Cir. 2007). Therefore, in light of the court's granting Plaintiffs' leave to amend their claim for rescission, discussed in detail below, the court denies MERS motion to dismiss with respect to the rescission claim as without MERS, it might not be possible for the court to afford complete relief to Plaintiffs on their rescission claim. *See Stewart v. BAC Home Loans Servicing, LP*, No. 10-C-2033, 2011 U.S. Dist. LEXIS 24715, 2011 WL 862938, at *3 (N.D. Ill. Mar. 10, 2011) (declining to dismiss TILA rescission claim against MERS because "MERS may be necessary to get [plaintiff] back to [] status quo if [plaintiff's] rescission is enforced by the Court").

2.    Claim for Failure to Disclose

TILA regulates the relationship between lenders and borrowers in order to facilitate the "informed use of credit." *See* 15 U.S.C. § 1601(a). To that end, TILA requires that creditors make certain disclosures to borrowers, including disclosures of the various costs associated with the loan and of the borrower's right to rescind the transaction if the creditor retains a security interest in the borrower's principal dwelling.[6] 15 U.S.C. §§ 1635(a), 1638(a). *See generally*, 15 U.S.C. §§ 1601-

---

[6]    Plaintiffs also allege that their mortgage is subject to HOEPA. Enacted as an amendment to TILA, HOEPA requires creditors making "high-cost" or "high-rate" loans to provide additional disclosures to certain borrowers, as it creates a special class of regulated loans that are made at higher interest rates or with excessive costs and fees. 15 U.S.C. §§ 1631-32;1639. Specifically, HOEPA protections apply if a loan meets one of two high-cost loan triggers: (1) the annual

10

1667f. In certain circumstances, a borrower may also bring a civil cause of action for statutory damages against an assignee of a creditor. 15 U.S.C. § 1641(a). Under section 1641(a), however, only a violation of TILA that is apparent on the face of the instrument is enforceable as against an assignee of the creditor. 15 U.S.C. § 1641(a). A civil action for damages under TILA must be brought within one year of the TILA violation. 15 U.S.C. § 1640(e).

Plaintiffs have failed to allege facts which render plausible the conclusion that the TILA mandated disclosures were not made. *See Hudson v. Bank of Am., N.A.*, No. 3:09-CV-462, 2010 U.S. Dist. LEXIS 57909, at *14, 2010 WL 2365588, at *5 (E.D. Va. June 11, 2010) (dismissing TILA claim where plaintiff "merely restate[d] the[] essential elements of a TILA claim [but failed to] present sufficient factual matter, accepted as true, to render the legal conclusions and factual inferences supporting these elements plausible"). Moreover, even if Plaintiffs had provided sufficient factual allegations, Plaintiffs' recovery of actual and statutory damages for the original creditor's failure to provide unspecified disclosures before or during the closing held September 11, 2007 – for which BAC would be liable where the violations are "apparent" based on its "assignee" status – is barred by the one year statute of limitations as Plaintiffs did not initiate this action until March 23, 2010, almost two and a half years after the September 2007 closing. *See* 15 U.S.C. §

---

percentage rate exceeds by eight percent the yield on Treasury securities of comparable maturity for first-lien loans, or above ten percent for subordinate-lien loans; or (2) the total of all the loan's points and fees exceed eight percent of the loan total or $400 (adjusted for inflation), whichever is greater. 15 U.S.C. § 1602(bb)(1), (3); 12 C.F.R. § 226.32(a)(1)(i), (ii).

While Plaintiffs contend various settlement charges qualified as "excessive fees" and thus constituted an "illegal kickback" under 12 U.S.C. § 2607 – a claim dismissed with prejudice in the February Order – Plaintiffs do not allege with any degree of specificity as to why the loan from SAM qualifies as a high cost or interest loan per the definition outlined above. Accordingly, as Plaintiffs have failed to allege sufficient facts demonstrating that their mortgage loan is subject to HOEPA, Plaintiffs HOEPA claim is DISMISSED WITH PREJUDICE.

11

1640(e). Accordingly, TILA's one year statute of limitations bars Plaintiffs' damages claim for disclosure violations against BAC based on its status as the assignee and is thus DISMISSED WITH PREJUDICE.

      3.     <u>Claims for Failure to Honor Rescission & for Rescission</u>

Next, the court considers Plaintiffs' rescission claims under TILA. TILA permits mortgage borrowers (where their "principal dwelling" serves as the security interest) to rescind the loan transaction within three days following the latter of either: (1) consummation of the transaction; (2) delivery of the rescission notice; or (3) delivery of all material disclosures. *See* 15 U.S.C. § 1635(a); 12 C.F.R. § 226.23(a)(1)-(3). Regulation Z provides that for transactions eligible for rescission, the lender must provide the borrower with two copies of the notice to rescind. 12 C.F.R. § 226.23(b)(1). When the lender fails to provide the required notices or make the required disclosures, the borrower's right to exercise rescission expires "three years after the date of consummation of the transaction or upon the sale of the property, whichever occurs first."[7] 15 U.S.C. § 1635(f). *See Beach*, 523 U.S. at 412 (differentiating between right to rescission and right to sue for damages). Unlike a statutory damages claim against an assignee under § 1641(a), a rescission claim against an assignee under § 1641(c) may be brought even if there is no TILA violation apparent on the face of the loan documents. *See Carrington v. HSBC Bank USA, N.A.*, 760 F. Supp. 2d 589, 596 (E.D. Va. 2010) (stating "[t]he clear language of [15 U.S.C. § 1641(c)] indicates any consumer may have the right to rescind a transaction against any assignee to the same extent that she might rescind against the original creditor").

---

[7]     The right of rescission does not apply to certain transactions; however, those are not applicable here. *See* 15 U.S.C. § 1635(e)(1)-(2); 12 C.F.R. § 226.23(f)(1)-(2).

12

Here, Plaintiffs allege that the original creditor failed to give Plaintiffs the requisite copies of the notice of their right to rescind the loan at the time of closing.[8] Am. Compl. at 2. Assuming this allegation is true, which the court is obligated to do at this stage, Plaintiffs' right to rescind extended to three years after the September 2007 closing as against BAC. Plaintiffs purportedly timely exercised their statutory right to rescind on March 19, 2010 via what appears to be a self-drafted Notice of Right to Cancel naming both BAC and MERS as lenders. *See* Ex. C, Notice of Right to Cancel [DE-15.3]. Defendants do not acknowledge this claim.

Section 1635(b) of TILA provides the framework for exercising the right of rescission. In particular, when a borrower exercises a valid right to rescission, the creditor must take steps to rescind the transaction within twenty days of receipt of consumer's demand for rescission, 15 U.S.C. § 1635(b); 12 C.F.R. § 226.23(d)(2), and this obligation applies to assignees. *Id.* § 1641(c). *Accord Frazile v. EMC Mortg. Corp.*, 382 Fed. Appx. 833, 839 (11th Cir. 2010). "[T]he one-year limitations period for violation of § 1635(b) claims runs from twenty days after a plaintiff gives notice of rescission." *Frazile*, 382 Fed. Appx. at 839. If defendants acted unlawfully in refusing to rescind the loan, their refusal constitutes an independent TILA violation for which statutory damages and attorneys' fees may be available. *See Hudson*, 2010 U.S. Dist. LEXIS 57909, at *17-18, 2010 WL 2365588, at *6 (explaining "it may be possible to state a claim for statutory damages based on creditor or assignee's refusal to rescind a transaction").

To the extent Plaintiffs contend rescission was automatic and thereby seek to enforce the

---

[8]     Plaintiffs also rely on assignee liability as to the creditor's failure to provide material disclosures in support of their rescission claim. However, as noted above, Plaintiffs amended complaint lacks sufficient allegations that the required TILA disclosures were not made. Accordingly, the court limits its analysis of Plaintiffs' claim for rescission to the allegation that the required copies of the notice of their right to rescind were not provided.

13

alleged notice of rescission against Defendants by requesting a declaratory judgment that Plaintiffs gave a valid notice of rescission of the loan transaction which BAC failed to honor, Plaintiffs are mistaken. The Fourth Circuit follows the majority view that "unilateral notification of cancellation does not automatically void the loan contract." *Shelton*, 486 F.3d at 821. As the *Shelton* court explained, if such a right existed, "a borrower could get out from under a secured loan simply by claiming TILA violations, whether or not the lender had actually committed any." *Id.* Rather, Plaintiffs' notice to Defendants that they wished to rescind the mortgage transaction "merely advanced a claim seeking rescission" – it did not establish their right to rescission. *Shelton*, 486 F.3d at 821 (explaining rescission is not effective until the creditor or assignee consents to it or a court rules that plaintiff is entitled to rescind). *See also Yamamoto v. Bank of N.Y.*, 329 F.3d 1167, 1170 (9th Cir. 2003) (explaining under TILA, a lender's "security interest 'becomes void' only when the consumer 'rescinds' the transaction [and] [i]n a contested case, this happens when the right to rescind is determined in the borrower's favor"). Accordingly, to the extent Plaintiffs seek a declaratory judgment, attorney's fees or statutory damages based Defendants' failure to honor Plaintiffs' rescission notice, Plaintiffs' request is DENIED.[9] *See Yowell v. Residential Mortg. Solution, LLC*,

---

[9]     Courts are split over whether a borrower can recover damages and attorney's fees against an assignee who fails to honor a valid rescission notice. *Compare Brodo v. Bankers Trust Co.*, 847 F. Supp. 353, 359 (E.D. Pa. 1994) ("Neither § 1641 nor any other section provides for a statutory penalty or an award of attorney's fees to a plaintiff should an assignee fail to respond to a valid rescission notice. Rescission is therefore the only remedy [] to which plaintiff is entitled.") with *Fairbanks Capital Corp. v. Jenkins*, 225 F. Supp. 2d 910, 916-17 (N.D. Ill. 2002) (holding that plaintiffs are entitled to recover attorney's fees against an assignee who wrongfully refuses to rescind and suggesting that such plaintiffs are also probably entitled to recover statutory damages). This court has not found a Fourth Circuit opinion on point but is aware of at least one lower court decision holding a borrower taking judicial action to establish a right to rescind may not recover attorney's fees against an assignee unless the TILA violations are "apparent on the face of the disclosure statement." *Little v. Bank of Am., N.A.*, 769 F. Supp. 2d 954, 968 (E.D. Va. 2011). At this juncture, this court need not determine whether TILA allows the recovery of civil damages or

14

2011 U.S. Dist. LEXIS 91699, at *18, *24, 2011 WL 3654388, at *7-*8 (W.D. Va. Aug. 17, 2011) (denying plaintiff's request for declaratory judgment, statutory damages and attorney's fees as notice of rescission only advanced a rescission claim); *Hudson*, 2010 U.S. Dist. LEXIS 57909, at *17, 2010 WL 2365588, at *6 (denying plaintiffs' request for statutory damages and attorney's fees for defendant's refusal to recognize plaintiffs' right of rescission as notice "merely advanced a claim seeking rescission").

Next, the court turns to Plaintiffs' claim for rescission. The plain language of TILA requires the lender to release its security interest and take other steps to effect rescission before the borrower is required to tender. However, the procedural guidelines for rescission of a loan transaction set forth by TILA may be amended by a court. 15 U.S.C. § 1635(b); 12 C.F.R. § 226.23(d)(4). Relying on *Shelton*, district courts in the Fourth Circuit have held that in order for a claim for rescission to survive a motion to dismiss, a plaintiff must "plausibly allege that [he or] she will be able to tender the loan proceeds in the event the court orders rescission." *Mosley v. OneWest Bank*, No. RDB-11-00698, 2011 U.S. Dist. LEXIS 120647, at *15, 2011 WL 5005193, at *5 (D. Md. Oct. 19, 2011) (finding plaintiff's allegation that she "is prepared to discuss a tender obligation, should it arise, and satisfactory ways to meet this obligation" speculative and insufficient to demonstrate that plaintiff will be able to tender the amount necessary to effectuate a rescission). *Accord Wordell v. Fed Nat'l Mortg. Ass'n*, No. CCB-10-1404, 2011 U.S. Dist. LEXIS 25245, at *6, 2011 WL 1005041, at *2 (D. Md. March 11, 2011) (dismissing plaintiff's claim for rescission because neither the complaint nor the briefs specified an ability or intent to repay the loan and collecting cases holding

---

attorney's fees against an assignee when the disclosure violations are not apparent on the face of the disclosure document.

15

the same); *Brown v. HSBC Mortg. Corp.*, No. 1:10-CV-1427, 2011 U.S. Dist. LEXIS 80943, at *11 2011 WL 3101780, at *4 (E.D. Va. July 22, 2011) (dismissing a claim for rescission because the complaint contained "no representation or indication that [p]laintiff is willing or may become able to tender the proceeds of the loan").

Despite the holdings in *Mosley*, *Wordell* and *Brown*, it is unclear to this court that *Shelton* requires a plaintiff allege an affirmative statement of present ability to tender the loan proceeds back to the lender in order to survive a Rule 12(b)(6) motion. Rather, *Shelton* arguably stands for the proposition that district courts, on a case-by-case basis and in the interest of equity, may alter the sequence of procedures of rescission under TILA. *See Shelton*, 486 F.3d at 820 (noting "the trial court, in exercising its powers of equity, could have either denied rescission or based the unwinding of the transaction on the borrowers' reasonable tender of the loan proceed"). *Accord Yamamoto*, 329 F.3d at 1173 (noting "the courts, at any time during the rescission process, may impose equitable conditions to insure that the consumer meets his obligations after the creditor has performed his obligations as required by" TILA) (citation omitted). Nevertheless, it does not appear that *Shelton*, as a matter of law, sanctions dismissal at the pleading stage for failure to allege a present ability to tender. Indeed, the procedural posture (decided at the summary judgment stage) and language appearing in that case suggest otherwise. In particular, the *Shelton* court, in upholding the district court's granting of summary judgment, relied on the particular circumstances and evidence presented and noted the trial judge had specifically determined that the plaintiffs were unable to tender the loan proceeds. *See Shelton*, 486 F.3d at 821 (explaining "[a]lthough the better practice may have been for the trial judge to set terms for rescission by allowing the [plaintiffs] a time certain to tender the net loan proceeds, it was unnecessary under the facts of this case"). *See also Yamamoto*, 329 F.3d

16

at 1173 (noting the lack of evidence of the borrower's capacity to pay back her loan and holding district court had discretion to demand assurance of the borrower's ability to repay loan proceeds to avoid an unnecessary trial on the merits).

Here, neither the amended complaint nor Plaintiffs' responsive brief include assertions that Plaintiffs have tendered or are prepared to tender the amount of the original loan proceeds. Defendants do not address this issue and in fact, completely ignore the TILA rescission claim. If these were the only circumstances presented to the court, the court would find there are inadequate facts to determine whether it would be equitable to require Plaintiffs to tender prior to rescission. *Compare Moseley v. Countrywide Home Loans, Inc.*, No. 7:09-CV-210-FL, 2010 U.S. Dist. LEXIS 113568, at *10, 2010 WL 4481782, at *4 (E.D.N.C. Sept. 30, 2010), adopted, 2010 U.S. Dist. LEXIS 114164, 2010 WL 4484566 (E.D.N.C. Oct. 25, 2010)(dismissing plaintiffs' rescission claim in part because "they concede[d] they [were] unable to repay the loans in question"). However, Defendants' foreclosure reference in their memorandum in support of their original motion to dismiss, *see* [DE-10 at 3 n.2] and Plaintiffs' similar reference in its response to Defendants' second motion to dismiss, *see* Pls.' Resp. at 3 [DE-25], raise the inference that Plaintiffs either are presently in the foreclosure process because they are behind on loan payments or no longer own their home. Such circumstances suggest Plaintiffs lack the necessary means to tender loan proceeds, *compare Little*, 769 F. Supp. 2d at 966 (finding borrower's allegation that "he would be able to tender the amount necessary for TILA rescission, either through refinancing or, as a last resort, by sale of the home" sufficient to withstand motion to dismiss) or their rescission right has possibly expired. *See Jones v. Saxon Mortg.*, 537 F.3d 320, 325 (4th Cir. 1998) (noting "if a foreclosure sale occurred prior to the expiration of three years after the date of the consummation of the transaction . . . [the

17

borrower] would have had to give proper notice of rescission prior to the foreclosure sale or his right of rescission would have expired on the date of the foreclosure sale").

Based on these facts, the court follows the Fourth Circuit's guidance in *Shelton* and exercises its equitable power to require Plaintiffs to allege an ability to fully tender the amount owed on the loan. Without such an allegation in this case, the amended complaint fails to state a claim for rescission relief under TILA. *See Moore v. Wells Fargo Bank, N.A*, 597 F. Supp. 2d 612, 617 n.5 (E.D. Va. 2009) (explaining *Shelton* "has indicated that allowing a plaintiff a 'time certain' to tender is generally a 'better practice' than denying rescission" but conceding that "granting a plaintiff such opportunity may be 'unnecessary' when the facts of the case suggest that the plaintiff is unable to tender and such plaintiff has not made payments on the outstanding loan for a lengthy period after seeking to rescind the loan"). Accordingly, Plaintiffs are granted leave to amend their amended complaint to allege their ability to tender the loan proceeds (less payments made). If Plaintiffs file a second amended complaint, they will eventually be required to satisfy the court of their ability to "repay the loan proceeds before going through the empty (and expensive) exercise of a trial on the merits." *See Yamamoto*, 329 F.3d at 1173.

**B.      RESPA Claims**

Plaintiffs allege that BAC violated RESPA by failing to (1) provide notice of the loan assignment to BAC for servicing fifteen days prior to said assignment and (2) respond to their written inquiry for an accounting of all payments. Am. Compl. at 2-3.

RESPA prescribes certain actions to be followed by entities or persons responsible for servicing federally related mortgage loans, including responding to borrower inquires. 12 U.S.C. § 2605. Relevant to Plaintiffs' first claim, RESPA requires that a borrower be given notice of an

18

assignment or transfer of a loan. However, RESPA provides two different notice requirements depending on the status of the party. Under 12 U.S.C. § 2605(b), the servicer of a federally related mortgage loan must give notice to the borrower of the assignment or transfer of the loan "not less than 15 days before the effective date of transfer of the . . . loan." 12 U.S.C. § 2605(b)(1), (2)(A) (emphasis added). Similarly, the assignee/transferee of the loan must provide the borrower written notification of its status as assignee. 12 U.S.C. § 2605(c)(1). In particular, such notice must be given within fifteen days after the transfer. *Id.* § 2605(c)(2)(A). Plaintiffs' allegation that they were not given notice 15 days prior to the transfer implicates the unnamed assignor, not BAC – the transferee. Accordingly, Plaintiffs fail to state a claim under 12 U.S.C. § 2605(c) against BAC as its notice requirements were triggered after the transfer of the loan to BAC. Plaintiffs' RESPA claim brought pursuant to 12 U.S.C. § 2605(c) is DISMISSED WITH PREJUDICE.

As to Plaintiffs' second claim under RESPA, Plaintiffs allege that BAC "failed to give an accounting of all payments when requested (See Exhibit "C")." Am. Compl. at 3. As done in the February Order, the court interprets this allegation as alleging a failure by BAC to respond to Plaintiffs' purported "qualified written request" in violation of 12 U.S.C. § 2605(e)(1)(A).[10] Section 2605(e)(1)(A) of RESPA requires a loan servicer, upon receipt of a borrower's qualified written request ("QWR"),[11] to provide a written response acknowledging receipt of the correspondence

---

[10] Exhibit C to which Plaintiff cites in support of this claim is a Notice of Right to Cancel. Plaintiffs' Qualified Written Request is attached as Exhibit A. *See* [DE-15.1].

[11] A "qualified written request" is a written correspondence that:

(i) includes, or otherwise enables the servicer to identify, the name and account of the borrower; and (ii) includes a statement of the reasons for the belief of the borrower . . . that the account is in error or provides sufficient detail to the servicer regarding other information sought by the borrower.

19

within 20 days and to take certain action with respect to the borrower's inquiries within sixty days of receipt. 12 U.S.C. § 2605(e)(1)(A), (2). The action required includes providing information requested by the borrower or an explanation of why the information requested is unavailable or cannot be obtained by the servicer, conducting an investigation of the borrower's concerns, providing an explanation or clarification of the reasons the servicer believes the account is correct and, if necessary, making appropriate corrections to the borrower's account. *Id.* § 2605(e)(2)(B) & (C). A borrower may recover "actual damages" if the loan servicer fails to comply with these provisions. *Id.* § 2605(f)(1)(A).

Here, Plaintiffs include as an exhibit to the amended complaint a document entitled "Qualified Written Request" dated March 19, 2010. Ex. A [DE-15.1]. A fair reading of this document, however, leads the court to conclude that it served as a communication challenging the validity of the loan and not a communication relating to the servicing of the loan as defined by statute.[12] Indeed, the letter seeks *inter alia* copies of loan documents, assignments of the deed of trust and promissory note and copies of property inspection reports and appraisals and a loan transactional history. *See Junod v. Dream House Mortg. Co.*, No. CV 11-7035-ODW, 2012 U.S.

---

12 U.S.C. § 2605(e)(1)(B).

[12]     Under RESPA, servicing is defined as

> receiving any scheduled periodic payments from a borrower pursuant to the terms of any loan, including amounts for escrow accounts . . . , and making the payments of principal and interest and such other payments with respect to the amounts received from the borrower as may be required pursuant to the terms of the loan.

12 U.S.C. § 2605(i)(3).

20

Dist. LEXIS 3865, at *11-*12 2012 WL 94355, at *3-*4 (C.D. Cal. Jan. 5, 2012) (explaining copies of the promissory note and deed of trust and "a complete life of loan transactional history" are "not the type of information RESPA contemplates"). In the letter, Plaintiffs also claim they were not provided appropriate disclosures prior to closing and "may be [] victim[s] of predatory lending." *See DeVary v. Countrywide Home Loans, Inc.*, 701 F. Supp. 2d 1096, 1108 (D. Minn. 2010) (explaining requests regarding the financing of the original loan, rather than information regarding the servicing thereof, are not covered by RESPA). There are no allegations in the amended complaint regarding irregularities in BAC's servicing of the loan and the notice does not identify purported errors with Plaintiffs' account or ask questions relating to BAC's servicing thereof. *See Marsh v. BAC Home Loans Servicing*, No. 2:09-CV-813-FTM-29DNF, 2011 U.S. Dist. LEXIS 33733, at *21-*22, 2011 WL 1196415 at *8 (M.D. Fla. March 29, 2011) (finding the notice sent by plaintiff did not qualify as a valid QWR because "[n]othing in the notice indicates that there was a problem with the servicing of the loan (e.g., the way BAC received plaintiffs' scheduled periodic payments due under the loan)"); *Hintz v. JP Morgan Chase Bank, N.A.*, No. 10-2825, 2011 U.S. Dist. LEXIS 12416, at *45, 2011 WL 579339 at *8 (D. Minn. Feb. 8, 2011) ("the letters were not QWRs because [p]laintiffs did not identify purported errors in their account or ask questions related to Chase's servicing of their loan," and because "[p]laintiffs' letters had no relation to Chase's receipt or application of their payments"). Accordingly, Plaintiffs' March 2010 notice did not qualify as a valid QWR and thus BAC's failure to respond thereto does not subject BAC to RESPA liability.

Furthermore, even assuming the notice was a valid QWR and that BAC failed to acknowledge receipt of Plaintiffs' QWR or failed to respond timely and adequately to Plaintiffs' questions therein, Plaintiffs nevertheless do not state a claim under 12 U.S.C. § 2605(e) as Plaintiffs

21

fail to allege any pecuniary loss attributable to the RESPA violation. *See Hutchinson v. Delaware Sav. Bank FSB*, 410 F. Supp. 2d 374, 383 (D.N.J. 2006) ("[A]lleging a breach of RESPA duties alone does not state a claim under RESPA. Plaintiffs must, at a minimum, also allege that the breach resulted in actual damages."); *Ginn v. CitiMortgage, Inc. (In re Ginn)*, No. 10-05107-HB, __ B.R. __, 2012 Bankr. LEXIS 44, at *29, 2012 WL 112974, at *9 (Bankr. D.S.C. Jan. 11, 2012) (noting "even if CitiMortgage did not comply with the RESPA provisions pertaining to QWRs [] [p]laintiffs failed to sufficiently allege that they suffered actual and/or statutory damages resulting from CitiMortgage's alleged RESPA violation"); *Wittenberg v. First Indep. Mortg. Co.*, No. 3:10-CV-58, 2011 U.S. Dist. LEXIS 39310, at *45, 2011 WL 1357483, at *16 (N.D. W. Va. Apr. 11, 2011) (holding "a plaintiff must allege that the loan servicer's failure to properly respond to a QWR caused pecuniary damage"); *Frazile v. EMC Mortg. Corp.*, 382 F. Appx. 833, 836 (11th Cir. 2010) (holding "an allegation of damages is a necessary element of any claim under § 2605"). Accordingly, Plaintiffs' RESPA claim brought section 2605(e) is DISMISSED WITH PREJUDICE.

**C.      Plaintiffs' Remaining Claims**

Finally, as noted previously, Plaintiffs' amended complaint includes references to the FCRA, the ECOA and the FTCA. Am. Compl. at 5. Plaintiffs again fail to make any factual allegations under these statutes which could give rise to a plausible claim. In fact, Plaintiffs complaint contains no allegations as to these federal statutes. The court notes the exhibits to the amended complaint include a "Notice of Insufficient Validation." Ex. D [DE-15.4]. Plaintiffs' amended complaint contains no allegations regarding this notice and Plaintiffs do not explain how it supports a cause of action under the FCRA, the ECOA or the FTCA. Similarly, Plaintiffs fail to allege any facts in support of their request for punitive damages for "harassment, emotional distress and displacement."

22

Accordingly, to the extent Plaintiffs attempt to state a claim for violations of the FCRA, the ECOA and the FCTA or for harassment, emotional distress or displacement, such claims are DISMISSED WITH PREJUDICE.

## IV. CONCLUSION

For the foregoing reasons, it is ORDERED that the Second Motion to Dismiss [DE-17] is ALLOWED. Plaintiffs' claims pursuant to HOEPA, RESPA, FCRA, ECOA, FTCA, their harassment, emotional distress and displacement claim and their damages claim for violations of TILA are DISMISSED WITH PREJUDICE. Plaintiffs' claim for rescission under TILA is DISMISSED WITH LEAVE TO AMEND. As set forth in this order, if Plaintiffs choose to file a second amended complaint for rescission under section 1635(b) of TILA, they must include an allegation setting forth their ability to tender the loan proceeds. Plaintiffs may file a second amended complaint within 14 days of the filing date of this Order. If Plaintiffs fail to file a second amended complaint within that time period, the Clerk of Court is DIRECTED to close this case.

SO ORDERED.      This the _14_ day of March, 2012.

James C. Fox
James C. Fox
Senior United States District Judge

23